United States District Court
District of Connecticut
FILED AT     NEW HAVEN

Roberta D. Tabora, Clerk

By_____
Deputy Clerk

11.16        20/8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA          :

                                  :                    ss: New Haven, Connecticut

COUNTY OF NEW HAVEN               :

**AFFIDAVIT**

I, Jonathan Troesser, a Task Force Officer with the Drug Enforcement Administration

("DEA"), being duly sworn, depose and state the following:

**INTRODUCTION**

1.  I am an investigative or law enforcement officer of the United States within the meaning
    of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to
    conduct investigations of and to make arrests for offenses enumerated in Title 18, United
    States Code, Section 2516.

2.  I have been employed as an Ansonia, CT Police Officer since July of 2007, and am
    currently a Detective assigned to DEA's, New Haven District Drug Task Force which is
    comprised of DEA agents and task force officers ("TFO") from the multiple other law
    enforcement agencies.

3.  During the course of my career, I have participated in numerous criminal investigations,
    including investigations into suspected narcotics trafficking, firearms trafficking, violent
    criminal activity, organized crime and money laundering. My participation in those
    investigations has included coordinating controlled purchases of narcotics utilizing
    confidential informants, cooperating witnesses and undercover law enforcement officers;
    coordinating the execution of search and arrest warrants; conducting electronic and

physical surveillance; analyzing records relating to narcotics trafficking; testifying in Federal Grand Jury and District Court proceedings; and interviewing individuals and other members of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport and distribute controlled substances. I have also received instruction relative to conducting drug investigations while attending the DEA Basic Narcotic School. Finally, I have participated in investigations involving the use of court-authorized interception of wire and electronic communication.

4. Based upon my experience and training, I am familiar with the manner and means employed by narcotics traffickers, including the manner and means by which narcotics traffickers communicate, as well as the devices commonly utilized by them, and those methods employed by narcotics traffickers in an effort to avoid detection by law enforcement.

5. I am familiar with the relative wholesale and retail value of various types of controlled substances, including heroin, cocaine, cocaine base ("crack"), marijuana, and oxycodone.

6. I am also familiar with the terminology and slang commonly employed by drug traffickers. Through my training and experience, I have learned that individuals involved in narcotics trafficking often times use coded and/or cryptic conversations to facilitate their illegal narcotics transactions as well as to avoid law enforcement scrutiny.

7. As part of my duties, I am conducting an investigation, together with other law enforcement officers, into suspected drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1), 843 and 846 (Possession with Intent to Distribute/Distribution of a Controlled Substance, Use of a Telephone to Facilitate a Drug Trafficking Crime, and, Conspiracy to Possess with Intent to Distribute and Distribution of a Controlled Substance,

respectively) (hereafter the "Target Offenses"), by Edgardo RIVERA, DOB 10/03/91, a.k.a. "Eggy", and others, including others yet unknown or not yet fully identified.

8. I am the co-case agent directing the investigation that is the subject of this affidavit.

9. Based upon information known to me as a result of my participation in this investigation, as well as information, which I have determined to be accurate and reliable, provided to me by other law enforcement officers, I am familiar with the information discussed herein. Where the contents of documents, or communications with others, are reported herein, they are set forth in substance and part, unless otherwise indicated.

10. I make this affidavit in support of: (1) an application for a search and seizure warrant for the cellular telephone utilizing phone number 860-985-8410, currently in the possession of the DEA NHDO as Exhibit N-663 under Case CQ-16-0030 and the contents and records of such cellular telephone. (2) an application for a search and seizure warrant for one Verizon Wireless Samsung flip style cellular telephone, currently in the possession of the DEA NHDO as Exhibit N-664 under case CQ-16-0030 and the contents and records of such cellular telephone and (3) an application for a search and seizure warrant for one LG "Smart" style cellular telephone, currently in the possession of the DEA NHDO as Exhibit N-665 under case CQ-16-0030 and the contents and records of such cellular telephone. These three phones were seized following the arrest of Rivera at his apartment in Hartford, CT on 10/5/2018. It is believed that the device contains information that will yield evidence related to the following Federal Offenses: Possession With Intent to Distribute and Distribution of, Mixtures and Substances Containing Detectable Amounts of Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

11. Based upon information known to me as a result of my participation in this investigation, as well as information, which I have determined to be accurate and reliable, provided to me by other law enforcement officers, I am familiar with the information discussed herein. Where the contents of documents, or communications with others, are reported herein, they are set forth in substance and part, unless otherwise indicated.

12. Since this Affidavit is being submitted for the limited purpose of the aforementioned authorizations, I have not included each and every fact known to me concerning this investigation. I have, rather, set forth only the facts that I believe are essential to establish the foundation necessary to support the issuance of the requested warrant and orders.

## PROBABLE CAUSE

13. On July 17, 2017 at 6:16 a.m., the Southington Police Department and medical emergency personnel responded to a residence for an unresponsive Victim #1. Life saving measures were attempted, including the mother of Victim #1 administering the anti-opiate medication naloxone, with minimal effects. Victim #1 was pronounced deceased on scene. Southington Police located evidence on scene which supported the theory that Victim #1 suffered a drug related overdose. Southington Police located bags, which were later found to contain fentanyl, in close proximity to Victim #1. These bags were all stamped "30/30", and were the only bags located on scene. Southington Police also seized Victim #1's cellular telephone from the scene. The mother of Victim #1 informed Southington Police that her son had suffered from opiate addiction for an extended period of time. The Office of the Chief Medical Examiner lists the cause of death for Victim #1 as "acute fentanyl toxicity". The State of Connecticut laboratory report concluded that the "30/30" bags were determined to contain fentanyl.

14. Victim #1's cellular telephone was transferred into the custody of your affiant. The search revealed no text messages which appeared to facilitate a successful drug transaction. A Facebook conversation was recovered between Victim #1 and Facebook user "Greg Demaio", who's true identify is known to your affiant and is herein referred to as Witness #1. This conversation, dated July 16, 2017, helped investigators identify Witness #1 as an acquaintance of Victim #1.

15. The Southington Police Department interviewed Witness #1 on two separate occasions in an attempt to gain information on Victim #1's overdose death. Witness #1 initially informed Southington Police of the following; that on July 16, 2017, Witness #1 spoke with Victim #1 via Facebook messenger in regards to money that Victim #1 owed Witness #1. Witness #1 stated that Victim #1 owed him money for heroin that Witness #1 previously supplied to Victim #1. Witness #1 stated that he did not meet with Victim #1 on July 16, 2017. The Southington Police Department conducted a second interview with Witness #1 several weeks later, believing that Witness #1 was withholding information during his initial statement. Witness #1 informed Southington Police of the following information during the second interview; that he knew Victim #1 would purchase heroin from a black male in Hartford named "Eggy". That he was 90% sure the phone number for "Eggy" was 860-985-8400. That "Eggy" has full tattoos on both arms, neck tattoos, and drives a Volkswagen Passat.

16. The Southington Police Department informed TFO Colin Lacey that Witness #1 recalled telephone number 860-985-8400 without the assistance of looking through his cellular telephone contacts. Your affiant believes Witness #1 was one digit off and inaccurate when stating telephone number 860-985-8400. It is reasonable to believe that Witness

#1, without the assistance of a cellular telephone, may not accurately remember a ten digit telephone number. Therefore, your affiant believes, and this affidavit will show, that the true telephone number for "Eggy" is actually the Target Telephone, one digit off from Witness #1's statement.

17. TFO Lacey analyzed Victim #1's cellular telephone data and located the Target Telephone in the call log on the evening of July 16, 2017. The following information was recovered from Victim #1's cellular telephone call log on July 16, 2017;

- Victim #1 calls Target Telephone at 6:25 p.m. with a duration of 1:13
- Victim #1 calls Target Telephone at 6:33 p.m. with a duration of 1:07
- Victim #1 missed call from Target Telephone at 6:34 p.m.
- Victim #1 incoming call from Target Telephone at 6:37 p.m. with a duration of :08

18. An administrative subpoena was sent to Sprint, the service provider for the Target Telephone. This revealed the Target Telephone billing information as "Brooklynn Turner, 63 E Euclid St, Hartford, CT 06112". The Target Telephone has an activation date of January 4, 2016. There was no user information or subscriber information listed. This subpoena revealed further text messages between the Target Telephone and Victim #1 on the evening of July 16, 2017. The following information was discovered from the subpoena response from Sprint;

- Victim #1 and the Target Telephone have 3 text message communications between 5:30 p.m. and 5:46 p.m. on July 16, 2017.

The text message communications were not recovered from Victim #1's cellular telephone, and the content of the messages is unknown.

19.    On August 11, 2017, United States Magistrate Judge Sarah A.L. Merriam signed a Court Order demanding Sprint to turn over cell tower data for the Target Telephone, with a date range of July 15, 2017 through July 17, 2017. On this same date, United States Magistrate Judge Sarah A.L. Merriam signed a Court Order demanding Verizon Wireless to turn over cell tower data for Victim #1's cellular telephone, with a date range of July 15, 2017 through July 17, 2017. Sprint and Verizon Wireless complied with the Court Orders and the information was analyzed by Task Force Officer Chaves, a forensic analyst trained in analyzing cell tower data. Task Force Officer Chaves explained the following to your affiant; the Target Telephone was hitting off a particular cell tower in Hartford, Connecticut on July 16, 2017 from 6:25 p.m. through 7:33 p.m. The specific location of this cell tower is in the vicinity of New Britain Avenue, Hartford, Connecticut. Victim #1's cellular telephone was hitting off the same cell tower in Hartford, Connecticut on July 16, 2017 from 6:32 p.m. through 6:37 p.m. Victim #1's prior location was in Southington, Connecticut. Victim #1's cellular telephone next location is in Southington, Connecticut at 7:02 p.m. on July 16, 2017.

20.    Your affiant believes, and this affidavit will show, that Victim #1 purchased heroin from RIVERA during the above time period, as facilitated by the phone calls and text messages with the Target Telephone.

21.    TFO Lacey utilized Facebook to search the Target Telephone number. This search revealed the Target Telephone is attached to the Facebook profile of "Odg Rivera". The profile page of "Odg Rivera" contains several photographs of the person purported to be

"Odg Rivera". It was discovered that the person utilizing the Facebook page "Odg Rivera" has several Facebook pages. The same cover photograph for the Facebook page "Odg Rivera" is used for the Facebook page for "Eggy Rivera". "Eggy Rivera" has three Facebook pages, all of which represent the same person. Based on the photographs used in each Facebook account, the user of these Facebook pages is one in the same. Additionally, this same cover photograph is utilized for the Facebook page of "Ondago Rivera". Based on the photographs used in this Facebook account, the user of "Ondago Rivera" is the same user as "Odg Rivera" and "Eggy Rivera". Therefore, there are a total of five Facebook pages for the same person purported to be "Odg Rivera", "Eggy Rivera", and "Ondago Rivera". These Facebook profiles were utilized to obtain the true identity of the person listed in the profiles, which your affiant has probable cause to believe is RIVERA.

22.    The aforementioned Facebook profiles show several photographs of the man purported to be "Odg Rivera", "Eggy Rivera", and "Ondago Rivera". There are clear photographs of a tattoo on the right hand of this person which says "Eggy". Additionally, the male has several neck tattoos and arm tattoos. The Facebook profiles show a connection to the Facebook user "Brooklynn Turner" and the Facebook user "Brooklynn Wannette". The Facebook user "Brooklynn Turner" and the Facebook user "Brooklynn Wannette" are one in the same, believed to be Brooklynn Turner, the person listed for the Target Telephone's billing information. The two persons appear in multiple photographs and appear to be in a dating relationship.

23.    The Facebook profiles for "Eggy Rivera" show his brother is "Edgar Rivera", and contains a link to the Facebook profile for "Edgar Rivera". The Facebook profile for

"Edgar Rivera" reveals his location is in New York State and his affiliation to the U.S. Army. DEA Intelligence Analysis Jason Houle searched U.S. Army files and located Edgar Rivera, DOB 01/08/81, believed to be the brother of "Eggy", "Odg Rivera", and "Ondago Rivera". Edgar Rivera was found to have a brother named Edgardo RIVERA, DOB xx/xx/91, from Hartford, Connecticut.

24.   A COLLECT inquiry shows Edgardo RIVERA, DOB xx/xx/91, 190 Sigourney Street, Hartford, Connecticut. RIVERA has no criminal convictions listed in the Connecticut State Police Record Check. The Hartford Police Department was contacted in an attempt to gain further information on RIVERA. In-house records at the Hartford Police Department for RIVERA show that he has a tattoo on his right hand which says "EGGY", as listed in their files as "T-HAND R "EGGY"". The Hartford Police Department supplied TFO Lacey with a booking photograph of RIVERA from an arrest on June 14, 2015. This photograph matched the photographs of the person on Facebook purported to be "Odg Rivera", "Eggy Rivera", and "Ondago Rivera". Specifically, the booking photograph of RIVERA shows a distinct tattoo on the right neck, underneath the ear, which matches the tattoo viewed on the male purported to be "Odg Rivera", "Eggy Rivera", and "Ondago Rivera" on Facebook. The Hartford Police Department also supplied in-house records for Brooklynn Turner, who's listed as the billing information for the Target Telephone. These records show that Turner's telephone number is 860-712-8936. A Facebook search for this telephone number reveals it is attached to the Facebook profile page of "Eggy Rivera".

25.   TFO Lacey contacted the Wethersfield Police Department for their police report #17-05116. This report indicates that RIVERA was arrested for a motor vehicle offense on

April 9, 2017, and was operating CT registration 9AHMD6, a 2003 Lincoln LS, color blue, registered to Brooklynn Turner.

26. Based upon the above information, police records and a booking photograph have positively identified RIVERA as the male depicted in the Facebook pages of "Odg Rivera", "Eggy Rivera", and "Ondago Rivera". Therefore, RIVERA has been linked to the Target Telephone via his Facebook page "Odg Rivera". Additionally, police records have linked RIVERA to Brooklynn Turner, the account billing information for the Target Telephone.

27. On September 20, 2017, Task Force Officer Fraenza, Southington Detective Dobratz, and TFO Lacey spoke with Witness #1 at his residence. Officers were invited into his residence and then spoke with Witness #1 on the back porch. Witness #1 stated the following; that on July 16, 2017 he did not meet up with Victim #1. That he knew Victim #1 would often purchase heroin from a male in Hartford named "Eggy". That in approximately May of 2017 he received the phone number for "Eggy" from Victim #1 for the purpose of buying heroin. That Witness #1 couldn't remember the phone number for "Eggy", however, that he previously informed Southington Police of this phone number. That Witness #1 purchased heroin from "Eggy" approximately 10 times. The most heroin he ever purchased from "Eggy" was 10 bags, and the least amount of heroin he purchased from "Eggy" was 5 bags. That "Eggy" charged Witness #1 $40 per 10 bags of heroin. That every time Witness #1 bought heroin from "Eggy" the bags were stamped "30/30". TFO Lacey showed Witness #1 a photograph of the "30/30" heroin stamped bags located on scene of Victim #1's overdose, which Witness #1 confirmed to be the same "30/30" stamp he was referring too. That "Eggy" was a black male, with

tattoos on both arms, tattoos on his neck, approximately 6 feet tall, late 20's in age. That Witness #1 has seen "Eggy" often operating a Volkswagen Passat, and a second vehicle which Witness #1 could not describe. Witness #1 stated that he knows a female named "Elena" who also buys heroin from "Eggy". TFO Lacey confirmed that "Elena" was, in fact, Elena Gomez, identified as the second top caller for the Target Telephone.

28. TFO Lacey showed Witness #1 two photographs of RIVERA from the Facebook profile page of "Eggy Rivera". Witness #1 stated that he was 95% sure that the male depicted in the photograph on the Facebook page of "Eggy Rivera" was, in fact, the "Eggy" that he purchased heroin from. Witness #1 further stated that he recognized the tattoo on the hand, as shown in one of the photographs.

29. Approximately 10 minutes after leaving the residence of Witness #1, TFO Lacey received a phone call from Detective Dobratz of the Southington Police Department. Detective Dobratz informed TFO Lacey that he just received a phone call from Witness #1. Witness #1 informed Detective Dobratz that he omitted information from his statement and wanted to add further details. TFO Lacey and Detective Dobratz returned to Witness #1's location and spoke with him. Witness #1 added the following information:

That he was not completely forthcoming during the prior conversation because he was nervous he would get in trouble. That on the night of July 16, 2017 he did, in fact, meet with Victim #1. Witness #1 stated that he went to Hartford with Victim #1 and they bought heroin from "Eggy". Victim #1's cellular telephone was utilized to contact "Eggy" on the way to Hartford. TFO Lacey informed Witness #1 that the cellular

telephone of Victim #1 was in Hartford, Connecticut at approximately 6:30 p.m. on this date, to which Witness #1 stated was the correct time of this the drug transaction with "Eggy". That upon arriving at the meet location he parked in a parking space next to "Eggy". "Eggy" was backed into a parking space, operating a grey Volkswagen Passat, and alone in the vehicle. "Eggy" was parked on the passenger side of Witness #1's vehicle, and Witness #1 stated that he could clearly see the male he knows as "Eggy" sitting in the driver seat. That Victim #1 met with "Eggy" inside the Passat for a short period of time, and then returned to Witness #1's vehicle with heroin and crack cocaine. Witness #1 stated that Victim #1 purchased heroin with the stamp "30/30". That Witness #1 received 13 bags of heroin from Victim #1. That Victim #1 also purchased heroin for himself, however, Witness #1 was not sure how much heroin Victim #1 had for himself. That Witness #1 sniffed heroin in the vehicle before leaving Hartford that night. That Witness #1 viewed Victim #1 sniff 3 bags of heroin in the car before leaving Hartford.

30. Witness #1 attempted to describe the location in which he would meet "Eggy", including the location he and Victim #1 met "Eggy" on the evening of July 16, 2017. Witness #1 stated the location was near New Britain Avenue and Wethersfield Avenue in Hartford, Connecticut. This location coincides with the cell tower data which shows Victim #1's phone near New Britain Avenue on the evening of July 16, 2017.

31. TFO Lacey, in an attempt to corroborate the statement of Witness #1, reviewed subpoena information previously received from the Target Telephone wireless carrier, Sprint. This information showed Witness #1's cellular telephone had 29 contacts with the Target

Telephone between July 17, 2017 and August 18, 2017. This coincides with Witness #1's statement that he has purchased heroin from RIVERA approximately 10 times.

32. TFO Lacey was unable to find a connection between RIVERA and a Volkswagen Passat. However, your affiant knows from training and experience that drug dealers will often operate rental or borrowed vehicles when conducting illicit activities, and therefore it is reasonable to believe that the Volkswagen Passat which Witness #1 discussed may potentially be a rental or borrowed vehicle.

33. On September 28, 2017, TFO Lacey interviewed Witness #2, who was identified as a top twenty caller for the Target Telephone. Witness #2, whose identity is known to your affiant, agreed to meet with TFO's Lacey and Wethered at a predetermined location. Witness #2 stated the following; that the Target Telephone was the phone number for his drug dealer in Hartford, Connecticut. Specifically, Witness #2 stated that he has been using this same drug dealer for the past 6 years. Witness #2 showed your affiant his telephone, which indicated that the Target Telephone was listed under the contact name "dough". Witness #2 sated that he called his drug dealer "dough" for no particular reason other than his previous drug dealer was called "doughboy". Witness #2 stated that he didn't know his drug dealers true name. Witness #2 showed your affiant the only non-deleted text messages in his phone with the Target Telephone. One of the text messages, dated September 28, 2017, shows the Target Telephone texting Witness #2 "Wat u need". Witness #2 responds by stating "I need one and a half b and a 45 hard". The Target Telephone then responds with an address where the drug transaction will take place. Witness #2 confirmed that the above text message conversation was a drug transaction for heroin and crack cocaine. Your affiant, from training and experience,

knows that "one and a half b and a 45 hard" is one and a half bundles of heroin and $45 worth of crack cocaine. Witness #2 further stated that he didn't know his drug dealer by the name "eggy", or anything resembling this nickname. Witness #2 described his drug dealer as being Spanish, approximately 30 years of age, braided hair, several tattoos on both arms, and operating a baby blue Lincoln sedan. Your affiant, after reviewing several photographs of RIVERA from Facebook, confirms that this description is matching the description of RIVERA. Additionally, as referenced in paragraph #29, RIVERA was arrested in Wethersfield in April of 2017 while operating a blue Lincoln sedan. Witness #2 stated that he has known his drug dealer for approximately six years and was confident he would recognize his drug dealer if shown a photograph. TFO Lacey then showed Witness #2 the booking photograph of RIVERA, from the Hartford Police Department and dated June 14, 2015, to which Witness #2 stated "yeah that's him, that's definitely him". Witness #2 further stated that he often purchased heroin from his drug dealer on East Euclid Street in Hartford. Witness #2 stated that he often witnessed his drug dealer leave a specific residence on East Euclid Street and meet him out on the street for the drug transaction. Witness #2 described this residence as being a blue house with a handicapped ramp in front. TFO Lacey later drove by the residence of 63 East Euclid Street, Hartford, Connecticut, which was identified through subpoena records as the residence of Brooklynn Turner, and confirmed this residence is blue in color with a ramp leading to the front door. Witness #2 further stated that the only stamp he remembered buying from his drug dealer was "30/30". Witness #2 stated that his drug dealer has been selling this particular stamp for about one year.

34. That during the week of May 18, 2018, members of the DEA and Southington Police Department formulated a plan to utilize a Southington Police Department Confidential Source, hereinafter referred to as CS, to complete a controlled purchase of heroin from Edgardo "Eggy" RIVERA in Hartford, Connecticut. Prior to the controlled purchase, law enforcement officers monitored and recorded a controlled telephone call between the CS and RIVERA at 860-985-8410 who directed the CS to meet with his "little cousin" to complete the drug transaction. During the recorded phone call between RIVERA and the CS, RIVERA stated that the unknown associate was selling RIVERA's product. Upon the completion of the call, the CS confirmed that the male on the phone call was the male known to him as "Eggy". The CS traveled to the meet location provided by RIVERA and was met by a young Hispanic male, who the CS described as being approximately sixteen years old. The CS exchanged $100 of DEA Official Advanced Funds for forty red baggies (4 bundles) of suspected heroin. Surveillance units maintained visual contact with the Hispanic male after the transaction as he walked from the meet location to the front door of 15 Goshen Street.

35. That samples of the suspected heroin purchased were tested by the DEA Northeast Laboratory. The laboratory confirmed that the tested samples contained a composite of Fentanyl, heroin and caffeine.

36. That during the week of June 25, 2018, members of the DEA and Southington Police Department formulated a plan to utilize a Southington Police Department Confidential Source, hereinafter referred to as CS, to complete a controlled purchase of heroin from Edgardo "Eggy" RIVERA in Hartford, Connecticut. Prior to the controlled purchase, law enforcement officers monitored and recorded a controlled telephone call between the

CS and RIVERA at 860-985-8410 who directed the CS to meet with him in the area of Sigourney Street in Hartford, CT. Upon the completion of the call, the CS confirmed that the male on the phone call was the male known to him as "Eggy". While the CS was traveling to the meet location provided by RIVERA, the CS contacted RIVERA by phone. RIVERA then directed the CS to meet in the area of the Infiniti Dealership on Weston Street in Hartford, CT. Upon arriving in the area of the Infiniti Dealership, the CS pulled up alongside a black Infiniti sedan operated by RIVERA. RIVERA was not comfortable conducting the transaction in the area and instructed the CS to follow him. The CS and RIVERA pulled over near the intersection of Barbour Street and Cleveland Street in Hartford, CT. The CS then exited his/her vehicle and got into the passenger seat of the Infiniti sedan operated by RIVERA. The CS exchanged $75 of OAF for 30 green wax paper baggies (3 bundles) of suspected heroin.

37. On 9/4/2018, United States Magistrate Judge Sarah A.L. Merriam issued a complaint and arrest warrant for Edgardo "Eggy" Rivera for violations of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).

38. Between 9/4/2018 and 9/25/2018, members of the DEA New Haven District Office formulated plans to attempt to locate and arrest Edgardo "Eggy" Rivera. Numerous attempts were made to locate RIVERA in and around Hartford, CT but were unsuccessful. On 9/20/2018, RIVERA was declared a Federal Fugitive.

39. On 10-02-2018, the Honorable Holly B. Fitzsimmons authorized a search warrant, for location information related to target telephone number 860-985-8410, with service provided by Sprint. The USMS utilized the phone location information and physical

surveillance to locate and identify Rivera's residence at 44 Forest Street, Apartment C1, Hartford, CT.

40.   On 10/5/2018, members of the USMS, DEA and Southington Police Department formulated a plan to arrest Rivera at his residence at 44 Forest Street, Apartment C1, Hartford, CT.  At approximately 6:15 AM, agents knocked multiple times on the door of the apartment and announced "police, open the door".  Agents waited for a response from within the apartment but there was no response.  The USMS forced entry into the apartment and Rivera was located on the bed just inside the studio apartment and arrested without further incident.  Upon securing Rivera in handcuffs, DUSM CJ Wood cleared the area of the bed so that Rivera could sit and get dressed.  Upon lifting the mattress from the box spring, DUSM Wood located a black handgun.

41.   At approximately 6:19AM, TFO Troesser contacted target telephone number 860-985-8410 and observed a cellular telephone on the bed ringing. TFO Troesser secured the Alcatel flip style cellular telephone which was later processed as Exhibit N-663.

42.   SA Dana Mofenson advised Rivera of his rights and then informed Rivera as to why he was under arrest.  Rivera gave consent to search the apartment and admitted to having fentanyl in a safe within a closet near the bathroom.  Rivera opened the safe for the agents on scene.  Approximately $14,000.00 in US Currency was seized from the safe along with approximately 123.58 gross grams of a tan powdered substances containing a detectable amount of heroin and fentanyl and approximately 200.92 gross grams of two white powdered substances each containing a detectable amount of fentanyl.

43.   Also seized from the apartment were two additional cellular telephones.  One of the cellular telephones was a Verizon Wireless Samsung flip style cellular telephone, seized

as Exhibit N-664. The other cellular telephone was an LG smart phone, seized as Exhibit N-665.

44. Based upon my specialized training and experience in drug investigations, I know that it is common for drug traffickers to possess and utilize multiple cellular telephones. Drug traffickers often have one phone for personal use such as friends and family, some of which may be fellow drug traffickers, as well as other phones for contact with sources of supply, coconspirators and/or their customers. Having multiple cellular telephones and changing their phone numbers frequently are tactics used by drug traffickers to avoid detection and identification by law enforcement personnel.

## CONCLUSION

45. I submit that this affidavit supports probable cause to believe that the three above referenced cellular telephones that are currently in the possession of the DEA NHDO as Exhibits N-663, N-664 and N-665 were utilized by Edgardo RIVERA during the commission of the following offenses; Possession With Intent to Distribute and Distribution of, Mixtures and Substances Containing Detectable Amounts of Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). As a result, I request that the attached search and seizure warrant be issued to search and seize the items described in Attachment A, which constitute evidence, fruits, and instrumentalities of the subject offenses.

_____
Jonathan F. Troesser
DEA Task Force Officer

Subscribed and sworn to before me this 16ᵗʰ day of November, 2018

/s/ Sarah A. L. Merriam, USMJ
SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

All records contained in the subject telephones, which are in DEA custody under Case File CQ-16-0030 identified as Exhibits N-663, N-664 and N-665, as authorized by the search warrant to include the following:

1. the telephone numbers, ESN numbers, serial numbers, and SIM card numbers of the subject telephones;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the subject telephone;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes (violations of 21 U.S.C. §§ 841(a)(1) and 846);

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the device/s, and identification bearing the names or photographs of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the subject telephones;

5. any and all evidence showing or tending to show the identity of the makers or users of the data and information contained in the subject telephones, such as passwords, sign-on codes, and program designs;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of said subject telephones;

8. internet browsing history, to include, internet searches in the memory of the subject telephones;

9. images and videos in the memory of the subject telephones; and,

10. evidence of user attribution showing who used or owned the subject telephones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described subject telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.

